# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:21-cv-00366-MR

| | |
|---|---|
| **JASON CARMONA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **UNION COUNTY SHERIFF'S OFFICE,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Do. 64]. Also pending are the Plaintiff's pro se "Dispositive/Non Dispositive Motion to Affect Case and Allow claim to be brought to trial by jury or if Defendant's or courts see fit a possible settlement plan possibly" [Doc. 61] and "Motion to Subpoena All Mental Health & Medical Records or court order so this new evidence can be for all to view" [Doc. 74].

## I. BACKGROUND

The incarcerated Plaintiff Jason Carmona, proceeding pro se, filed this action pursuant to 42 U.S.C. §§ 1983, 1985, and North Carolina law addressing incidents that allegedly occurred while he was a pretrial detainee

at the Union County Jail (UCJ).[1] [See Doc. 1: Complaint]. The Plaintiff's unverified Second Amended Complaint[2] [Doc. 19: Second Am. Complaint] passed initial review against Defendants Kelly Martin[3] and Hollie Younts[4] for failure to protect, and the Court exercised supplemental jurisdiction the Plaintiff's claims against them in their official capacities for violating Article I, Section 19 of the North Carolina Constitution. [Doc. 23: Order on Initial Review]. The Plaintiff seeks compensatory, punitive, and nominal damages. [Doc. 19: Second Am. Complaint at 9].

The Defendants filed the instant Motion for Summary Judgment. [Doc. 64: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 65: Roseboro Order]. The Plaintiff responded [Doc. 66: Verified Response;[5]

---

[1] The Plaintiff is now incarcerated in the North Carolina Department of Adult Correction.

[2] The original Complaint [Doc. 1] and the Amended Complaint [Doc. 6] are also unverified.

[3] "Cpl. K. Martin" in the Second Amended Complaint. The Clerk will be instructed to correct the Defendant's name in the Court's record.

[4] "FNU Younts" in the Second Amended Complaint. The Clerk will be instructed to correct the Defendant's name in the Court's record.

[5] Titled "Plaintiff's return answer to Defendant's motion for Summary Judgment with some evidence not including the thumb drive evidence." The Verified Response refers to a

Doc. 69 Unverified Response;[6] see also Doc. 67: Response Ex],[7] the Defendants replied [Doc. 71: MSJ Reply], and the Plaintiff filed a Surreply [Doc. 73: MSJ Surreply].[8]  This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

thumb drive recording of intercom conversations with correctional officers. [Doc. 66: Verified Response at 7, 10].  The Court has received no such evidence.  In any event, the recordings as described by the Plaintiff would have no bearing on the outcome of this case.

[6] Titled "Second add on to Plaintiff's first response to Defendant's Motion for Summary Judgment."

[7] The Plaintiff's exhibits are largely irrelevant.  For instance, they relate to individuals who are not defendants, claims that did not pass initial review, and incidents that occurred outside the relevant timeframe.  They also contain inadmissible evidence such as hearsay and the Plaintiff's handwritten comments, which will be disregarded. See Giles v. Nat'l Railroad Passenger Corp., 59 F.4th 696 (4th Cir. 2023) ("Courts in the Fourth Circuit may not consider inadmissible evidence on a motion for summary judgment"); Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (holding that conclusory statements, without specific evidentiary support, are insufficient to defeat a motion for summary judgment).

[8] The Surreply is titled "Plaintiff's Reply to Defendants Recent Reply in the Reply in Further Support of Defendants' Motion for Summary Judgment." The Court's Local Civil Rule 7.1(e) provides that "[s]urreplies are neither anticipated nor allowed … but leave of Court may be sought to file a surreply when warranted. Here, the Plaintiff did not seek leave to file the Surreply and, accordingly, the Surreply will be disregarded.  The Plaintiff has also filed an "Answer from Plaintiff to Defendant Union County Sheriff's Office's Motion to Dismiss and Motion for a Preliminary Injunction & Asking Courts for Attorney" [Doc. 70] in the instant case as well as in Case No. 3:23-cv-3-MR.  The document was addressed in Case No. 3:23-cv-3, and it has no apparent relevance to the instant Motion for Summary Judgment. It will be disregarded. Even if these documents were considered, they would not alter the outcome of the case. The Plaintiff is cautioned that any future filings must include only a single case number in the caption.  Filings that request relief but that are not filed as motions will not receive a response by the Court; filings that include more than one case number, or that are otherwise improper, will be stricken.

judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the

4

nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version

5

of the facts for purposes of ruling on a motion for
summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

The Plaintiff was arrested on February 17, 2021, and was placed in UCJ pending trial for charges including death by distribution in violation of N.C. Gen. Stat. § 14-18.4. [Doc. 64-4: Younts Aff. at ¶ 22 Doc. 64-6: MSJ Ex at 1-2 (Booking Report)].

When an inmate is booked into UCJ, he is initially housed in Adam Block until the classification process is complete. [Doc. 64-2: Dennis Affid. at ¶ 15]. During February 2021, newly admitted inmates were also housed in Adam Block for a minimum of 7 days due to COVID-19 related policies. [Doc. 64-2: Dennis Affid. at ¶ 16].

UCSO houses inmates with more serious charges together in the Baker Block, unless there is a reason not to do so, for the purpose of enhancing security. [Doc. 64-2: Dennis Affid. at ¶¶ 30-31]. The Plaintiff's charges included death by distribution such that Baker Block was "the natural location for his placement." [Doc. 64-4: Younts Aff. at ¶ 28]. Before an inmate is moved from Adam Block, a classification officer reviews the

inmate's current charges, "keep-aways," and any other information relevant to the proper and safe housing of the inmate. [Doc. 64-2: Dennis Affid. at ¶ 17]. Keep-aways may result from several sources, including prior bad conduct and a risk of fighting or danger. [Doc. 64-2: Dennis Affid. at ¶¶ 18-21]. Inmates can also request that other inmates be added to the keep-away list by making a request through the KIOSK/Jail ATM system. [Doc. 64-2: Dennis Affid. at ¶ 24; see Doc. 64-10: MSJ Ex at 3 (UCJ Policy & Procedure, Inmate Classification and Housing Assignment)]. An inmate's request that another inmate be added to his keep-away list is usually referred to a classification officer. [Doc. 64-2: Dennis Affid. at ¶ 25]. When reviewing a request from an inmate to add another inmate to the keep-away list, the officer will discuss the request with both inmates to ensure that a genuine need for such exists. [Doc. 64-2: Dennis Affid. at ¶ 26].

Officer Younts was the classification officer who made decisions about the Plaintiff's placement in UCJ. [Doc. 64-4: Younts Aff. at ¶ 26]. Corporal Martin[9] was a classification supervisor, but she made no classification decisions about the Plaintiff. [Doc. 64-4: Younts Aff. at ¶ 27; Doc. 64-3: Martin Aff. at ¶¶ 5, 7]

---

[9] Martin is now a sergeant. [Doc. 64-3: Martin Aff. at ¶ 5].

7

The Plaintiff has been through the housing classification process and has a list of "keep-aways," i.e., inmates that cannot be housed in the same housing unit as Plaintiff. [Doc. 64-4: Younts Aff. at ¶¶ 23-24; see Doc. 64-5: MSJ Ex at 1-2 (Classification printout)]. The Plaintiff expressed a desire not to be housed in Baker Block, but Officer Younts explained that he would be placed at that location due to the severity of his charges. [Doc. 64-4: Younts Aff. at ¶ 29; [Doc. 66: Verified Response at 1-2]. The Plaintiff stated that he would be harmed if he were placed in Baker Block; when Officer Younts asked who presented a danger to him, however, the Plaintiff was unable to state who posed a threat to his safety. [Doc. 64-4: Younts Aff. at ¶¶ 30, 52; Doc. 66: Response at 2].

On February 24, 2021, the Plaintiff was placed in a cell of the upper tier of Baker Block[10] just before 3:00 p.m. [Doc. 64-4: Younts Aff. at ¶ 32]. At approximately 4:30 p.m., he was returned to Adam Block for reclassification after the Plaintiff reported that he and his cellmate were not getting along. [Doc. 64-4: Younts Aff. at ¶¶ 33-36; see Doc. 64-8: MSJ Ex at 1 (Feb. 24, 2021 Incident Report)].

---

[10] There are two tiers in each block (upper and lower), and the inmates housed in each tier are let out of their cells at opposite times. [Doc. 64-4: Younts Aff. at ¶ 31]. Therefore, no inmate housed in the lower tier can interact with an inmate in the upper tier and vice versa. [Id.].

On March 2, 2021, the Plaintiff wrote, on the "Jail ATM," "ive been back here for w weeks plz move me too c-d block." [Doc. 67: Response Ex at 23] (errors uncorrected). J. Secrest[11] responded the same day, "classification will be moving people as spaces open up." [Id.]. That same day, he wrote: "been back here 2 weeks.. plz move me too c-d block … no kids.." [Id. at 25] (errors uncorrected). Officer Younts responded that same day, "Mr. Carmona, you will go to the block that you were classified to or you will remain in Adam Block." [Id.]. On March 4, 2021, the Plaintiff wrote "reclassify me, i don't want any trouble from b-block again i still want to move tomorrow like mrs. younts said earlier today no problems just let you know before something else escaldes. been back in A-block for 3 weeks and im not the one causing problems."[12] [Id. at 27] (errors uncorrected).

On March 5, 2021, Officer Younts reassigned the Plaintiff to housing in the lower tier of Baker Block, where he would have no interaction with his former roommate. [Doc. 64-4: Younts Aff. at ¶ 37]. Upon his second placement in Baker Block, the Plaintiff reasserted his belief that he would be unsafe in that Block, but again he was not able to provide the identity of any

---

[11] This individual is not a defendant in this action.

[12] Officer Younts responded on March 8, after the alleged assault: "Mr. Carmona, You were moved twice and have found yourself back in Adam Block both times. You will not dictate which block you will be classified to. For the time being, you will remain in Adam Block." [Id. at 27].

9

person who presented a threat to him. [Id. at ¶ 53]. As Younts could not corroborate a specific risk factor to the Plaintiff, she elected to follow UCJ's ordinary practice of placing inmates with very serious charges in Baker Block, unless there is a basis not to do so. [Id. at ¶ 54]. Because the Plaintiff was placed in the lower tier of Baker Block on his second placement, he would not have any interaction with his former roommate on the upper tier. [Id. at ¶ 56].

The cell transfer occurred at approximately 1:00 p.m. [Id. at ¶ 38]. According to the Plaintiff, he was beaten and stomped by four men within an hour of the transfer. [Doc. 66: Verified Response at 3]. His injuries included a bloody nose, a broken hand, PTSD, and emotional distress. [Id.].

At approximately 9:45 p.m., the Plaintiff used the intercom to report that he needed medical attention. [Doc. 64-4: Younts Aff. at ¶ 39]. The Plaintiff told the responding officers that he had slipped while talking on the phone and that he had injured his arm about 20 minutes earlier. [Id. at ¶ 40]. Officers watched the video from the cell block and observed that the Plaintiff had not fallen during the time period he claimed, so he was not taken to medical. [Id. at ¶ 41-42; Doc. 64-9: MSJ Ex at 1 (March 5, 2020 Incident Report)].

At approximately 3:00 a.m., the Plaintiff demanded to be taken to medical for examination of his wrist/hand. [Doc. 64-4: Younts Aff. at ¶ 43; Doc. 64-9: MSJ Ex at 2 (March 6, 2021 Incident Supplement)]. The Plaintiff claimed that he had climbed onto a sink, slipped and fell off, and hurt his hand. [Doc. 64-4: Younts Aff. at ¶ 44]. The Plaintiff had "no immediate and obvious injury." [Id. at ¶ 45]. He was nevertheless taken to medical where he was given a course of NSAID pain reliever. [Id. at ¶ 46; Doc. 67: Response Ex at 22, 191]. The Plaintiff was placed in a temporary holding cell. [Doc. 64-4: Younts Aff. at ¶ 47].

Only after being informed that he was being returned to the Baker Block did the Plaintiff claim that he had been attacked. [Id. at ¶ 49]. According to the Plaintiff, he and his roommate initially lied about the incident so that the inmates who assaulted the Plaintiff would not hear the Plaintiff snitch on them. [Doc. 66: Verified Response at 9-10]. UCJ staff searched the video archives of Baker Block for the day and found no indication that the Plaintiff had been assaulted. [Doc. 64-4: Younts Aff. at ¶ 50]. The Plaintiff was, nevertheless, transferred back to Adam Block for reclassification; he was ultimately moved to Charlie Block as he desired. [Id. at ¶ 51].

11

According to the Plaintiff, he told Officer Younts and Corporal Martin that he could not return to Baker Block because "some guys in there think [Plaintiff] murdered someone and slept with one of their girlfriends [and he would] get jumped." [Doc. 66: Verified Response at 3, 5; see Doc. 67: Response Ex at 30] (errors uncorrected). Martin responded "well you shouldn't have murdered no one or slept with any ones girlfriend you'll just have to get what's coming." [Doc. 66: Verified Response at 3; Doc. 67: Response Ex at 30] (errors uncorrected). Younts and Martin both "knew about the danger" because the Plaintiff "spoke to them directly and verbally, on kiosk and hand written note," yet they both assumed [that he] just wanted to get moved to another block...," and they chose to ignore the danger that they knew existed. [Doc. 66: Verified Response at 2].

However, the Defendants' forecast is undisputed that Officer Younts was not made aware of any specific risk to the Plaintiff from any inmate housed in Baker Block, and the Plaintiff never spoke to Martin about his assignment to Baker Block. [Doc. 64-4: Younts Aff. at ¶¶ 25, 55; Doc. 64-3: Martin Aff. at ¶ 10]. Corporal Martin nonetheless supported Officer Younts' decision to assign the Plaintiff to the Baker Block, as the Plaintiff did not provide Martin with the identity of any person who presented a threat to him there. [Doc. 64-3: Martin Aff. at ¶ 10; Doc. 64-4: Younts Aff. at ¶ 54]. At no

12

time was Officer Younts made aware of any specific risk to the Plaintiff from any inmate housed in Baker Block, and no inmate on Plaintiff's list of keep-aways was housed in Baker Block. [Doc. 64-4: Younts Aff. at ¶ 55].

## IV. DISCUSSION

The Eighth Amendment[13] prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986).

The Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners and other prison officials. See Farmer, 511 U.S. at 833. "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan,

---

[13] Because the Plaintiff was a pre-trial detainee at the relevant times, his deliberate indifference claims are properly brought under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983). However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims. See Moss v. Harwood, 19 F.4th 614, 624 n.4 (4th Cir. 2021) (noting that, "under Kingsley v. Hendrickson, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), pretrial detainees bringing excessive force claims under the Fourteenth Amendment are no longer required to satisfy the analogous subjective component that governs the Eighth Amendment excessive force claims of convicted prisoners ... [however] the Supreme Court has not extended Kingsley beyond the excessive force context to deliberate indifference claims, ... and neither has our court...."); Mays v. Sprinkle, 992 F.3d 295, 300-02 (4th Cir. 2021) (declining to decide whether a pretrial detainee must satisfy the subjective component of the Eight Amendment deliberate indifference standard).

511 U.S. 825, 834 (1994) (quotation marks omitted). Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To state a claim against a prison official for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard and objectively serious … risk of harm." Id.

Here, the undisputed forecast of evidence demonstrates that jail safety considerations dictated that the Plaintiff be housed in the B Block due to the seriousness of his offense, absent a legitimate reason not to house him there. The Plaintiff was placed in the B Block on February 24, and he was removed the same day after he claimed to have a problem with his roommate. On March 2, the Plaintiff expressed a preference to be housed in the C or D Block. Defendants Younts and Martin were aware that the Plaintiff claimed to face a threat in the B Block which the Plaintiff admits he was unable to substantiate. The Plaintiff was again moved to the B Block on a separate tier from his former roommate. The Plaintiff was never housed with an inmate on his keep-away list or whom he had specifically identified

14

as a threat. Nevertheless, on March 5, the Plaintiff was injured by inmates on B Block.

The foregoing fails to demonstrate the existence of a genuine dispute of material fact as to the Defendants' deliberate indifference. The decision to house the Plaintiff on B Block due to safety considerations, rather than the Plaintiff's preference and unsubstantiated claims of danger, fails to demonstrate that the Defendants knowingly disregarded an objectively serious risk of harm. See Farmer, 511 U.S. at 844, 114 (a prison official is not liable if he or she "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"); see also Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (finding that a prison official was not liable, because he did not actually draw the inference that the inmate was exposed to a substantial risk of serious harm); Strickland v. Halsey, 638 F. App'x 179 (4th Cir. 2015) (mere knowledge of an inmate's past threats and criminal history did not rise to the level of deliberate indifference where there was no evidence that the defendants drew the inference that the inmate posed a risk to others by subjectively inferring that he posed a substantial risk of serious harm). The Plaintiff's disagreement with the classification decision is insufficient to demonstrate deliberate indifference, as is any suggestion that his placement

in Baker Block was negligent.  See generally Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990)  (mere negligence does not violate the Eighth Amendment); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (an inmate's mere disagreements are not actionable as deliberate indifference, absent exceptional circumstances).  As the Plaintiff has not raised a genuine issue for trial, the Defendants' Motion for Summary Judgment is granted on the Plaintiff's failure to protect claim.[14]

The Plaintiff also asserts that the Defendants violated Article I, Section 19 of the North Carolina Constitution based on the same conduct.  The North Carolina Supreme Court interprets this clause synonymously with the federal Due Process Clause.  See Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 705 (E.D.N.C. 2009) (collecting cases).  Accordingly, the Plaintiff's Section 19 claim shares the same fate as his § 1983 claim and the Defendants will be granted summary judgment on that claim as well.[15]

In his "Dispositive/Non Dispositive Motion to Affect Case and Allow claim to be brought to trial by jury or if Defendant's or courts see fit a possible

---

[14] Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, they are entitled to qualified immunity on Plaintiff's § 1983 claim against them . As such, the Court grants summary judgment on this ground as well.

[15] The Court will not address the availability of other state law remedies because it has concluded that this claim must be dismissed.

settlement plan possibly" the Plaintiff asks the Court not to dismiss this action because there is evidence (including a thumb drive) that the Defendants made a "bad call" by returning him to Baker Block where he was assaulted. [Doc. 61 at 1]. The Motion is denied because there is no genuine dispute of material fact for trial as discussed *supra.*

In the "Motion to Subpoena All Mental Health & Medical Records or court order so this new evidence can be for all to view" the Plaintiff seeks medical and mental health records from the North Carolina Department of Public Safety (NCDAC)[16] and UCSO. [Doc. 74: Motion to Subpoena]. He claims that "things were documented and spoken of about the Defendants purposely putting [Plaintiff] back in harm's way." [Id. at 1].

The Plaintiff does not certify in the Motion that he attempted in good faith to resolve the discovery dispute before engaging the Court's assistance. The lack of certification alone warrants the denial of the Motion. Fed. R. Civ. P. 37(a)(1); see also LCvR 7.1(b) (a non-dispositive civil motion "must show that counsel have conferred and attempted in good faith to resolve areas of

---

[16] The Plaintiff did not enter NCDAC until December 20, 2022. See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1476563&searchLastName=carmona&searchFirstName=jason&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed July 21, 2023); Fed. R. Ev.id 201. He fails to explain why NCDAC would have any records pertinent to the March 5, 2021 incident.

17

Case 3:21-cv-00366-MR   Document 84   Filed 09/01/23   Page 17 of 19

disagreement or describe the timely attempts of the movant to confer with opposing counsel;" motions that fail to do so "may be summarily denied.").

Moreover, discovery closed on December 15, 2022, and the Plaintiff has failed to demonstrate good cause why discovery should be reopened. [Doc. 56: Order extending the discovery deadline]; see generally Fed. R. Civ. P. 16(b)(4) (a scheduling order may be modified "only for good cause and with the judge's consent"); Ardrey v. United Parcel Service, 798 F.2d 679, 682 (4th Cir. 1986) (the court has "wide latitude in controlling discovery and … [t]he latitude given the district courts extends as well to the manner in which it orders the course and scope of discovery"). His vague assertion that he believes that there may be medical and mental health records discussing the incident is insufficient to justify reopening discovery, and this Motion is therefore denied.

## IV. CONCLUSION

For the reasons stated herein, the Court grants the Defendants' Motion for Summary Judgment, and this action will be dismissed with prejudice. The Plaintiff's Motions are denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 64] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Plaintiff's "Dispositive/Non Dispositive Motion to Affect Case and Allow claim to be brought to trial by jury or if Defendant's or courts see fit a possible settlement plan possibly" [Doc. 61] and "Motion to Subpoena All Mental Health & Medical Records or court order so this new evidence can be for all to view" [Doc. 74] are **DENIED**.

The Clerk is respectfully directed to replace "FNU Younts" with Hollie Younts, and "K. Martin" with Kelly Martin the Court's record, and to terminate this action.

**IT IS SO ORDERED.**

Signed: August 31, 2023

_Martin Reidinger_
Martin Reidinger
Chief United States District Judge